UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

BINANCE HOLDINGS LIMITED,                    :
                                             :    Case No: 1:26-cv-1980
                        Plaintiff,           :
                                             :
            vs.                              :
                                             :
DOW JONES & COMPANY, INC. d/b/a THE          :
WALL STREET JOURNAL,                         :
                                             :
                        Defendant.           :
                                             :
                                             :
-------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DOW JONES & COMPANY, INC.'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Amanda B. Levine
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
(212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com

Azeezat Adeleke (*pro hac vice* forthcoming)
1301 K Street NW Suite 500 East
Washington, D.C. 20001
Telephone: (202) 973-4237
azeezatadeleke@dwt.com

*Attorneys for Defendant Dow Jones &
Company, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

     A.  The Parties ................................................................................................................ 2

     B.  The Article ................................................................................................................ 3

     C.  Binance's Comments For The Article .......................................................... 5

     D.  The Complaint ......................................................................................................... 6

ARGUMENT .......................................................................................................................... 6

     I.  BINANCE FAILS TO STATE A CLAIM FOR DEFAMATION ............................. 7

         A.  Actual Malice Is The Appropriate Fault Standard In This Action ......................... 8

            1.  The Actual Malice Standard Applies Under New York Law .......................... 8

            2.  The Actual Malice Standard Applies Because Binance Is a Public Figure ...... 9

         B.  Binance Does Not—And Cannot—Plead Actual Malice ................................... 10

            1.  Binance's Pre-Publication Denials Do Not Support an Allegation of Actual Malice .............................................................................................. 12

            2.  The Timing of the Article's Publication Does Not Support an Allegation of Actual Malice ....................................................................................... 15

            3.  Binance's Post-Publication Denials Are Irrelevant to an Actual Malice Inquiry ...................................................................................................... 18

     II.  THE JOURNAL IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER NEW YORK'S ANTI-SLAPP STATUTE ............................................................ 18

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Amend. Praetorian v. N.Y. Times Co.*,
  2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................6, 7, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................11

*Biro v. Conde Nast*,
  2014 WL 4851901 (S.D.N.Y. Sept. 30, 2014) ......................................................3, 11

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ..................... *passim*

*Bloom v. A360 Media LLC*,
  2024 WL 2812905 (S.D.N.Y. June 3, 2024) ....................................................11, 17

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. 2024) .............................................................11, 19

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984) ......................................................................................................18

*Brimelow v. New York Times Co.*,
  2021 WL 4901969 (2d Cir. Oct. 21, 2021) ...............................................11, 13, 18

*Button v. N.Y. Times Co.*,
  2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025),
  *appeal filed*, Case No. 25-2634 (2d Cir. Oct. 22, 2025) ........................................19

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021),
  *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022) .......................................................11

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
  2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017),
  *aff'd*, 720 F. App'x 87 (2d Cir. 2018) ..............................................................12, 14

*Carey v. Carey*,
  74 Misc. 3d 1214(A) (Sup. Ct. N.Y. Cty. 2022),
  *aff'd*, 220 A.D.3d 477 (1st Dep't 2023) ...................................................................8

*Celle v. Filipino Reporter Enters., Inc.*,
209 F.3d 163 (2d Cir. 2000)..................................................................................................10

*Church of Scientology Int'l v. Behar*,
238 F.3d 168 (2d Cir. 2001)..................................................................................................10

*Church of Scientology Intern. v. Daniels*,
992 F.2d 1329 (4th Cir. 1993) ..............................................................................................17

*Coliniatis v. Dimas*,
965 F. Supp. 511 (S.D.N.Y. 1997) ..............................................................................12, 13, 16

*Consortium for Indep. Journalism, Inc. v. United States*,
2025 WL 919504 (S.D.N.Y. Mar. 26, 2025),
*appeal dismissed*, Case No. 25-1376 (2d Cir. July 21, 2025)...................................................11

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
842 F.2d 612 (2d Cir. 1988)............................................................................................12, 13

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
551 F. Supp. 3d 320 (S.D.N.Y. 2021), *aff'd sub nom.*
*Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982
(2d Cir. Apr. 5, 2022)........................................................................................................4, 7

*Dfinity Found. v. N.Y. Times Co.*,
702 F. Supp. 3d 167 (S.D.N.Y. 2023),
*aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024) ....................................................................7

*Edwards v. Nat'l Audubon Soc., Inc.*,
556 F.2d 113 (2d Cir. 1977)..................................................................................................12

*Farah v. Esquire Mag.*,
736 F.3d 528 (D.C. Cir. 2013)................................................................................................7

*Garrison v. Louisiana*,
379 U.S. 64 (1964)..............................................................................................................11

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)..............................................................................................................9

*Golan v. Daily News, L.P.*,
77 Misc. 3d 258 (Sup. Ct. N.Y. Cty. 2022),
*aff'd*, 214 A.D.3d 558 (1st Dep't 2023)..................................................................................8

*Grifols, S.A. v. Yu*,
2026 WL 836657 (S.D.N.Y. Mar. 26, 2026) ..........................................................................19

iii

*Harte-Hanks Comms. v. Connaughton*,
    491 U.S. 657 (1989)..........................................................................................................17

*Heilbut v. Cassave Sciences, Inc.*,
    778 F. Supp. 3d 551 (S.D.N.Y. 2025)..............................................................................19

*Herbert v. Lando*,
    781 F.2d 298 (2d Cir. 1986)..............................................................................................18

*Huggins v. Moore*,
    94 N.Y.2d 296 (1999) .........................................................................................................8

*InkMango, Inc. v. Warren*,
    84 Misc. 3d 1227(A), (N.Y. Sup. Ct. N.Y. Cty. 2024),
    *aff'd*, 243 A.D.3d 476 (1st Dep't 2025).............................................................................9

*Jacob v. Lorenz*,
    626 F. Supp. 3d 672 (S.D.N.Y. 2022)................................................................... *passim*

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542 (S.D.N.Y. 2014)................................................................................12

*Kesner v. Buhl*,
    590 F. Supp. 3d 680 (S.D.N.Y. 2022) (Engelmayer, J.), *aff'd sub nom.*
    *Kesner v. Dow Jones & Co.*, 2023 WL 4072929 (2d Cir. June 20, 2023).........................9, 19

*Lemelson v. Bloomberg L.P.*,
    903 F.3d 19 (1st Cir. 2018)...............................................................................................14

*Lindberg v. Dow Jones & Co, Inc.*,
    2021 WL 5450617 (S.D.N.Y. 2021)................................................................................14

*Lively v. Wayfarer Studios LLC*,
    786 F. Supp. 3d 695 (S.D.N.Y. 2025).......................................................................3, 5, 11

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991)..........................................................................................................11

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020)..............................................................................12

*McInnes v. S. Poverty L. Ctr., Inc.*,
    811 F. Supp. 3d 1319 (M.D. Ala. 2025) ..........................................................................12

*MiMedx Grp.*, *Inc. v. Sparrow Fund Mgmt.*,
    2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018).................................................................12

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..................................................................................................10, 11

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007)...............................................................................................6

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022)............................................................... *passim*

*Reeves v. Assoc. Newspapers Ltd.*,
    232 A.D.3d 10 (1st Dep't 2024) .........................................................................................8

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)..........................................................................................................11

*Sweeney v. Prisoners' Legal Services, Inc.*,
    84 N.Y.2d 791 (1995) .......................................................................................................15

**Statutes**

N.Y. Civ. Rights Law §§ 70-a *et seq* ...............................................................................1, 19

N.Y. Civil Rights Law §§ 76-a *et seq* ................................................................................1, 8

Defendant Dow Jones & Company, Inc., which publishes *The Wall Street Journal* ("Dow Jones" or the "*Journal*") respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the Complaint of Plaintiff Binance Holdings Ltd. ("Binance") and awarding the *Journal* its attorneys' fees and costs under New York's anti-SLAPP statute, *see* N.Y. Civ. Rights Law §§ 70-a, 76-a.

## **PRELIMINARY STATEMENT**

This defamation action is brought by Binance, a company that operates the world's largest cryptocurrency exchange. For years, Binance has been at the forefront of public discourse, including because the company pled guilty to federal charges of violating anti-money laundering and sanctions laws, while its founder and former CEO pled guilty to failing to maintain an effective anti-money laundering program.  In keeping with its role as the preeminent American news outlet covering the world of business and finance, the *Journal* has frequently reported on Binance's activities, including the government scrutiny Binance has received.  These topics are, for obvious reasons, newsworthy.

As part of that coverage, the *Journal* published the article at the heart of this dispute: "Binance Fired Staff Who Flagged $1 Billion Moving to Sanctioned Iran Entities" (the "Article"). The Article reports on findings that a Binance internal investigation uncovered cryptocurrency transactions facilitated via Binance's platform that ultimately flowed to entities linked to Iranian-backed terror groups.  The Article reports that Binance fired the employees who investigated and flagged these transactions but nonetheless ultimately removed the suspect accounts.

Now, Binance has launched this meritless lawsuit, alleging that the Article is false and defamatory and that the *Journal* "severely diminished Binance's reputation generally in the industry."  Compl. ¶ 147.  Under both New York law and because Binance is a public-figure plaintiff bringing a defamation action, Binance must show that the *Journal* published the Article

with actual malice—*i.e.*, knowledge of the Article's falsity or a high degree of awareness of its probable falsity.  Binance's theory of actual malice largely boils down to a single allegation: the *Journal* knew the Article was false because Binance said so (both in pre- and post-publication communications).  But that is not the law.  News outlets are not required to take denials from reporting subjects at face value.  Were it otherwise, every time a reporting subject denied a claim, a news outlet would be subject to defamation liability.  Such a result would eviscerate the actual malice standard and sharply curtail the media's ability to report on newsworthy subjects.  In any event, the Article not only includes Binance's denials of wrongdoing but cites to articles from other news outlets—which Binance did *not* sue—that similarly reported on Binance's decision to fire its compliance investigators, all of which negates a finding of actual malice.

Ultimately, while Binance may wish the Article portrayed it in a more positive light, such editorial disagreement with the Article's contents cannot sustain a defamation claim.  Because Binance's Complaint is meritless, it should be dismissed at the outset, and the *Journal* should be awarded its attorneys' fees under New York's anti-SLAPP statute.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff Binance is the corporate entity that operates Binance.com, "the world's largest cryptocurrency exchange by trading volume and users."  Compl. ¶ 8.  Binance has over 300 million registered users and over $125 trillion in cumulative trading volume.  *Id.*

Defendant Dow Jones publishes the *Journal*.  *Id.* ¶ 9.  As it states in the Newsroom Standards & Ethics section of the publicly available "About Us" page on its website, the *Journal* "strive[s] to be a model for ethical, fact-based, ambitious news reporting," and has gained the trust of its readers based on its reputation as a "fair, accurate, and impartial" source of news.  *Id.* ¶ 12.

2

**B.     The Article**

The *Journal* published the challenged Article on its website on February 23, 2026 and published a print version of the Article in its newspaper on the following day.  Compl. ¶¶ 4, 47; *see* Declaration of Katherine M. Bolger ("Bolger Decl.") Ex. 1 (the "Article").[1]  The Article, which incorporates Binance's comments in its sub-headline and at least eight times throughout the Article, reports that, in 2023, Binance pled guilty to breaking sanctions and anti-money laundering laws, paying a record $4.3 billion fine and entering a U.S. monitorship.  *Id.* at 2.  It further explains how Binance's founder and then-CEO, Changpeng Zhao, also pled guilty to failing to maintain an effective anti-money laundering program, was sentenced to four months in prison, and was later pardoned by President Trump.  *Id.* at 2-3.  The Article then reports that, weeks after President Trump pardoned Zhao, Binance executives fired a team of investigators who had flagged $1.7 billion in transactions that moved through Binance to a network funding Iran-backed terror groups. *Id.* at 2-3, 10.  Relying on "documents, foreign law enforcement officials, and people familiar with Binance's operations," *id.* at 3, the Article explains that much of this money flowed through the accounts of two Hong Kong-based entities—an entity called Blessed Trust, which transferred over $1 billion to Iranian-linked digital wallets, and an entity called Hexa Whale Trading, which transferred $500 million to such digital wallets, *see id.* at 7.  It further reports that Binance ultimately offboarded both the Blessed Trust and Hexa Whale accounts from the Binance platform. *Id.* at 7-8.

---

[1] The Court can consider the Article because it is both central to and incorporated by reference into the Complaint. *See Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 714 (S.D.N.Y. 2025) (explaining "[i]f a complaint makes 'clear, definitive, and substantial' reference to a document, for example, by quoting from it extensively, the entire document is deemed to be part of the complaint" and that "[u]nder this standard, the Amended Complaint is deemed to include the New York Times article that is the subject of the . . . defamation claims"); *Biro v. Conde Nast*, 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014) ("On a Rule 12(b)(6) or Rule 12(c) motion, the court may consider documents that are incorporated by reference in or are integral to the complaint.  In a defamation case, this may include the entirety of a challenged publication that is excerpted in the complaint.").

3

The Article also reports about Binance's compliance protocols more generally. It quotes foreign law enforcement officials who explained that, after the plea deal, Binance became "far more cooperative with their requests for help." *Id.* at 6. But, over the past year, they claimed that Binance had "started cooperating far less with [officials'] requests to obtain financial information," and this latest incident "echoed some of the same concerns that drew U.S. scrutiny [to Binance] in 2023." *Id.* at 2-3.

The Article also references earlier reporting on the same topic, including a February 13 article in *Fortune* magazine, entitled "Exclusive: Binance fires top investigators who claim to have uncovered evidence of Iranian sanctions violations." *See* Bolger Decl. Ex. 2.[2] The *Fortune* article reported that Binance appeared to be "reneging on its promise" to enter a "new phase of 'regulatory maturity'" after it fired members of its compliance team who "uncovered evidence that entities tied to Iran had received more than $1 billion through the exchange." *Id.* at 1-2. The Article also references a *New York Times* article published earlier in the day on February 23, entitled, "Binance Employees Find $1.7 Billion in Crypto Was Sent to Iranian Entities." Bolger Decl. Ex. 3 at 1. The *New York Times* article likewise reported that Binance internal investigators discovered that "about $1.7 billion had flowed from two Binance accounts to Iranian entities with links to terrorist groups, a possible violation of global sanctions," and "[w]ithin weeks, Binance fired or suspended

---

[2] On a motion to dismiss, courts may take judicial notice of newspaper articles not for the truth of the matters asserted therein but for the fact they were published and what they said. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 136 n.24 (S.D.N.Y. 2022) (taking judicial notice "of the existence of articles written by and about Plaintiff for purposes of establishing when the articles were published and what was reported, not for the truth of the matter asserted"); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 324, n.2 (S.D.N.Y. 2021) ("The Court may take judicial notice of court filings and other matters of public record, including newspaper articles and media interviews, without converting a motion to dismiss into a motion for summary judgment."), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982 (2d Cir. Apr. 5, 2022). Accordingly, the court can take judicial notice of both the *Fortune* and *New York Times* articles.

at least four employees involved in the investigation." *Id.* at 2.[3]

### C.   Binance's Comments For The Article

Prior to publishing the Article, *Journal* reporter Angus Berwick sent Binance on Friday, February 20, a summary of the key findings from the *Journal*'s reporting and a detailed list of questions. *See* Compl. ¶¶ 31-32; Bolger Decl. Ex. 5.[4] He requested that Binance provide responses by Monday, February 23.  Compl. ¶ 33; Bolger Decl. Ex. 5.  In the interim, on Sunday, February 22, Binance published a blog post that seemingly sought to respond to the *Journal*'s findings regarding the investigation into Iranian transactions.  *See* Bolger Decl. Ex. 4 at 6.[5] Binance also provided on-the-record comments to the *New York Times* for its article, which went live on February 23.  *See* Bolger Decl. Ex. 3 at 2-4, 6-8.[6] Binance then responded to Mr. Berwick's questions by 2:00 pm that day, and the Article heavily incorporated Binance's response.  *See* Bolger Decl. Ex. 5.

The day after the *Journal* published the Article, Binance again reached out to Berwick, claiming the Article was inaccurate and defamatory and requesting corrections to it.  Compl. ¶¶ 130-31; Bolger Decl. Ex. 5.[7] That same day, Binance's counsel sent a formal retraction letter

---

[3] The Court may take judicial notice of the *New York Times* article for the reasons stated in footnote 2, *supra*. Additionally, because the Complaint itself discusses the *New York Times* article, *see* Compl. ¶¶ 6, 30, it is incorporated by reference into the Complaint and can be considered by this Court.  *See* n.1, *supra*.

[4] Binance claims that it requested additional time to respond to the *Journal*'s questions, but Berwick "failed to provide any response until Monday, February 23" when he indicated the *Journal* would not reconsider the deadline.  Compl. ¶¶ 35-36.  Binance fails to mention, however, that another *Journal* reporter working on the Article, Patricia Kowsmann, responded to Binance shortly after it sent its extension request on February 20, explaining that the *Journal* would not extend the response deadline.  *See* Bolger Decl. Ex. 6 at 1.  The *Journal*'s pre-publication communications to Binance requesting comment are subject to judicial notice because they are incorporated by reference into the Complaint.  *See Lively*, 786 F. Supp. 3d at 714.

[5] The Court may take judicial notice of the blog post because it is incorporated by reference into the Complaint. Compl. ¶¶ 37, 121.  *See Lively*, 786 F. Supp. 3d at 714.

[6] The *Fortune* article also included on-the-record comments from Binance denying these claims.  Bolger Decl. Ex. 2 at 3.

[7] The Binance request for a retraction related, in part, to different aspects of the Article than those at issue in this lawsuit.  *Compare* Bolger Decl. Ex. 5, *with*, Compl. ¶¶ 47-127.

to the *Journal*'s editor-in-chief and general counsel. *Id.* ¶ 133. The *Journal* has not altered or retracted the Article. *Id.* ¶ 139.

### D.    The Complaint

Binance filed this lawsuit on March 11, 2026, bringing a single cause of action for defamation based on 11 purportedly false statements in the Article. Compl. ¶¶ 47-127. Binance alleges the *Journal* knew each of these statements was false because Binance said so in its pre-publication comments. *Id.* ¶¶ 50, 56, 64, 73, 80-81, 88, 94, 100, 104-105, 112, 120. Binance claims the challenged statements "severely diminished [its] reputation generally in the industry," *id.* ¶ 147, and, as a result, seeks compensatory, general, specific, and punitive damages in an amount to be proven at trial, *id.* at p. 28 (Prayer for Relief). This Motion follows.

### ARGUMENT

The crux of Binance's Complaint in this action is simple: the *Journal* knew its reporting was false because Binance sent the *Journal* self-serving denials prior to the Article's publication and again after the Article was published. The Complaint repeats this mantra over and over again. But bare repetition does not transform these inadequate allegations into a defamation claim.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not credit a complaint's conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (giving "no effect to legal conclusions couched as factual allegations"). Where the pleaded facts

6

do not "plausibly give rise to an entitlement to relief," dismissal is appropriate. *Iqbal,* 556 U.S. at 679.[8]

"Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Ctr. for Med. Progress*, 551 F. Supp. 3d at 325-26 (quoting *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013)). "In other words, in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023), *aff'd*, 2024 WL 3565762 (2d Cir. July 29, 2024); *see also Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013) ("Summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails."). Because Binance has not pled a defamation claim, this lawsuit should be dismissed at the outset, and the *Journal* should be awarded its attorneys' fees and costs under New York's anti-SLAPP statute.

## I.    BINANCE FAILS TO STATE A CLAIM FOR DEFAMATION

The parties agree that New York substantive law governs this dispute. Compl. ¶ 18. In order to plead defamation under New York law, a plaintiff must establish that the challenged statements were: (1) "of and concerning" the plaintiff; (2) likely to be understood as defamatory by the ordinary person; (3) false; and (4) published with the requisite degree of fault. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) (quoting

---

[8] For the purposes of this motion only, as required by Rule 12, the *Journal* accepts the allegations contained in the Complaint as true. *See Iqbal*, 556 U.S. at 678. It does not, however, concede that Binance has plausibly alleged (or can plausibly allege) any of the elements of a defamation claim, including that the Article is false.

*Karedes v. Ackerley Grp.*, 423 F.3d 107, 113 (2d Cir. 2005)) (cleaned up).  Binance does not—and cannot—plausibly plead these elements and, accordingly, its Complaint should be dismissed.

### A.    Actual Malice Is The Appropriate Fault Standard In This Action

#### 1.    The Actual Malice Standard Applies Under New York Law

Under New York law, a defamation plaintiff who brings a claim "involving public petition and participation" must "establish[] by clear and convincing evidence" that the challenged statements were "made with knowledge of [their] falsity or with reckless disregard of whether [they] w[ere] false"—*i.e.*, actual malice. N.Y. Civil Rights Law §§ 76-a(1)(a)(1) and (2).  An action involves "public petition and participation" if it is based upon "any communication in . . . a public forum in connection with an issue of public interest." *Id.* § 76-a(1)(a)(1).  The present action clearly falls within this definition.

*First*, a "news media website," like the *Journal*, is a "quintessential public forum." *Reeves v. Assoc. Newspapers Ltd.*, 232 A.D.3d 10, 19 (1st Dep't 2024); *see also Golan v. Daily News, L.P.*, 77 Misc. 3d 258, 263-64 (Sup. Ct. N.Y. Cty. 2022) (the *Daily News* is a public forum), *aff'd*, 214 A.D.3d 558 (1st Dep't 2023).

*Second*, New York Civil Rights Law § 76-a(1)(d) provides that the term "public interest" should be "construed broadly" to mean "any subject other than a purely private matter." *See also Carey v. Carey*, 74 Misc. 3d 1214(A), at *5 (Sup. Ct. N.Y. Cty. 2022) ("[T]he scope of the subject matter which may be considered of 'public interest' has been defined in most liberal and far-reaching terms and includes all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general."), *aff'd*, 220 A.D.3d 477 (1st Dep't 2023).  New York courts have long recognized that publishers—not courts—determine what constitutes a matter of public interest and "[a]bsent clear abuse, the courts will not second-guess editorial decisions." *Huggins v. Moore*, 94 N.Y.2d 296, 303 (1999).  Here,

the Article discusses the business activities of the self-described "world's largest cryptocurrency exchange."  Compl. ¶ 2.  This unquestionably concerns a matter of "public interest."  *See, e.g.*, *Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022) (Engelmayer, J.) (holding that business activities subject to investigation by Securities and Exchange Commission constituted matters of public interest under the anti-SLAPP statute), *aff'd sub nom. Kesner v. Dow Jones & Co.*, 2023 WL 4072929 (2d Cir. June 20, 2023); *InkMango, Inc. v. Warren*, 84 Misc. 3d 1227(A), at *2 (N.Y. Sup. Ct. N.Y. Cty. 2024) (company's funding and investment activities were matters of public interest), *aff'd*, 243 A.D.3d 476 (1st Dep't 2025).[9]

### 2.    The Actual Malice Standard Applies Because Binance Is a Public Figure

Even if New York law did not require the actual malice standard, Binance still must plead it because it is a public figure.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) ("The *New York Times* standard defines the level of constitutional protection appropriate to the context of defamation of a public person.").  The United States Supreme Court has delineated two types of public figure defamation plaintiffs: general purpose public figures, who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," *id.* at 345, and limited purpose public figures, who "voluntarily inject" themselves or are "drawn into a particular public controversy," thereby becoming "a public figure for a limited range of issues," *id.* at 351.  "Where the question whether a plaintiff is a public figure can be determined upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage." *Biro*, 963 F. Supp. 2d at 270.

---

[9] Binance's assertion that the Article "concern[s] the internal affairs of Binance" and that "Binance did not seek to make those matters public or otherwise invite the media into those issues," Compl. ¶ 140, defies credulity.  Far from treating the investigation as an internal matter, Binance published a blog post on its own public-facing website to put forth its own narrative about the strength of its sanctions compliance program before the Article was published.  *See* Bolger Decl. Ex. 4.

Here, there is no question that Binance is a public figure. A plaintiff's "candid admissions" about its own status are "telling" in determining whether it is a public figure, and courts routinely rely on nothing more than the plaintiff's admissions, including in a complaint, to establish public figure status. *Biro*, 963 F. Supp. 2d at 274-75 (finding plaintiff to be a public figure based only on complaint's allegations); *see also Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) ("Given plaintiff['s] own characterization of himself as a 'well known radio commentator' within the Metropolitan Filipino-American community, the district court correctly held that he is a public figure."). In its Complaint, Binance admits that it is "the world's largest cryptocurrency exchange by trading volume and users," Compl. ¶ 2, with over 300 million registered users globally, *id.* ¶ 8 (alleging that Binance "lead[s] the evolution of the digital asset ecosystem"). And Binance further acknowledges that it is a "favorite target of the media," *id.* ¶ 20, and receives "an outsized portion of media scrutiny," *id.* ¶ 29. This is particularly so after Binance and its CEO pled guilty to violating anti-money laundering laws in the United States, *id.* ¶ 22, and Binance was forced to pay one of the largest corporate penalties in history, *see* Bolger Decl. Ex. 1 at 2.

Accordingly, as Binance itself has pled, due to its prominence in the cryptocurrency world, its high-profile plea deal with the federal government, and its frequent media attention, Binance is a public figure as a matter of law.

### B.    Binance Does Not—And Cannot—Plead Actual Malice

As such, Binance was required to plausibly allege in non-conclusory terms that the *Journal* acted with actual malice. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). "Despite its name, the actual malice standard does not measure malice in the sense of ill will or animosity." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001). Instead, a statement is published with actual malice when the defendant acted with "knowledge that the statements were

10

false or with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544; *see Sullivan*, 376 U.S. at 279-80 (1964). "[R]eckless disregard" in this context does not mean mere negligence or even gross negligence. *Masson v. New Yorker Mag.*, *Inc.*, 501 U.S. 496, 510 (1991). Indeed, it is not an objective standard at all. Rather, it means that the defendant must have actually "entertained serious doubts as to the truth of his [statement]," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or had a "high degree of awareness of [its] probable falsity[,]" *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). This is measured by what the defendant *actually* believed and not by what a "reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731.

The Second Circuit has emphasized that "the actual malice standard imposes on a plaintiff 'a heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise.'" *Brimelow v. New York Times Co.*, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021) (quoting *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988)). And, "[n]ot only is '[p]roving actual malice a heavy burden, but in the era of *Iqbal* and *Twombly*, pleading actual malice is a more onerous task as well." *Biro*, 963 F. Supp. 2d at 278. As a result, courts in the Second Circuit routinely grant motions to dismiss for failure to plead actual malice. *See, e.g.*, *see Brimelow*, 2021 WL 4901969, at *3; *Lively*, 786 F. Supp. 3d at 779-81; *1st Amend. Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *10 (S.D.N.Y. Mar. 28, 2025); *Consortium for Indep. Journalism, Inc. v. United States*, 2025 WL 919504, at *20 (S.D.N.Y. Mar. 26, 2025), *appeal dismissed*, Case No. 25-1376 (2d Cir. July 21, 2025); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 179-80 (S.D.N.Y. 2024); *Bloom v. A360 Media LLC*, 2024 WL 2812905, *5 (S.D.N.Y. June 3, 2024); *Prince*, 2023 WL 4492413, at *11-12; *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 692-94 (S.D.N.Y. 2022); *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810,

11

827 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 187-88 (S.D.N.Y. 2020); *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018); *Contemp. Mission*, 665 F. Supp. at 270; *MiMedx Grp., Inc. v. Sparrow Fund Mgmt.*, 2018 WL 4735717, at *12 (S.D.N.Y. Sept. 29, 2018); *Biro*, 963 F. Supp. 2d 255, 278, *aff'd*, 807 F.3d 541; *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 573 (S.D.N.Y. 2014).  Because Binance fails to meet this pleading burden, the result here should be the same.

### 1.  Binance's Pre-Publication Denials Do Not Support an Allegation of Actual Malice

Binance's central claim is that the *Journal* knew its reporting was false because Binance purports to have denied any wrongdoing and contested the reported facts in the comments it sent to the *Journal* prior to the Article's publication.  *See* Compl. ¶¶ 50, 56, 64, 72, 80, 88, 94, 100, 104, 112, 120.

But, it is well-settled that actual malice "cannot be predicated on mere denials, however vehement" because "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."  *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977).  Or, as one court in this District put succinctly: "Emphatic denials are part of the landscape of journalism, and a decision to print a story in the face of such a denial, particularly where, as here, it comes from an interested protagonist, does not establish clear and convincing evidence of malice." *Coliniatis v. Dimas*, 965 F. Supp. 511, 519 (S.D.N.Y. 1997).  "To hold otherwise would empower public figures to silence opposing speech, not based on the veracity of the speech in the mind of the speaker but based solely on the subject's denial of its veracity."  *McInnes v. S. Poverty L. Ctr., Inc.*, 811 F. Supp. 3d 1319, 1333 (M.D. Ala. 2025).  For this reason, courts routinely grant motions to dismiss

defamation actions when plaintiffs rely on their denials to support a finding of actual malice. *See Brimelow*, 2021 WL 4901969, at *3 ("[I]t is well settled that denials without more do not support a plausible claim of actual malice."); *Prince*, 2023 WL 4492413, at *11 ("[D]enials without more are insufficient to support a plausible claim of actual malice."); *Contemp. Mission, Inc.*, 665 F. Supp. at 270 ("Publication in the face of a denial by plaintiffs of a statement's truth does not demonstrate actual malice.").

This case exemplifies the reason for this rule. Binance—likely anticipating that the Article would include criticisms of its compliance regime and looking to avoid suspicions of further sanctions violations while under a monitorship—is the textbook definition of an "interested protagonist." *See Colinatis*, 965 F. Supp. at 519. Further, Binance has overstated the content of its "denials," many of which are not denials at all.

Nevertheless, far from ignoring these purported "denials," the *Journal* extensively referenced Binance's comments throughout the Article. The first time was in the Article's sub-headline (which was displayed right after the headline): "Weeks after Trump pardoned Binance's founder, the company dismantled probe and suspended the investigators; *Binance denied inquiry ended or staff fired for concerns*." Bolger Decl. Ex. 1 at 1 (emphasis added). Binance's further denials were noted throughout the Article's text, including the following:

- "A Binance spokeswoman said the investigators weren't 'suspended or terminated for raising compliance concerns,' but instead left 'based on individual circumstances.' The investigation continued, she said, and resulted in the entities identified being removed from Binance's platform." *Id.* at 2.

- "Binance said it was confident it complied with legal and reporting obligations and didn't knowingly permit sanctionable activity." *Id.* at 5.

- "The [Binance] spokeswoman said the investigation didn't establish that any Binance user transacted directly with a sanctioned entity, instead transmitting funds over several steps. She also said [the CEO] didn't reject a proposal to request more information from users, and added that Binance cooperates with law enforcement

13

and regulators." *Id.*

- In response to statements that Hexa Whale had provided false documentation to open an account at Binance: "Binance said it doesn't knowingly register customers with incomplete documentation, and VIP status doesn't alter its compliance standards." *Id.* at 7.

- In response to statements that the Blessed Trust account was labeled as "internal" and access was tightly restricted: "Binance said this was a 'standard measure to preserve investigative integrity, not to bypass controls,' and that the account was mislabeled as 'internal' by a junior employee." *Id.* at 8.

- In response to the statement that the Blessed Trust account triggered internal suspicious activity alerts that Binance then closed without taking action: "Binance said the alerts were handled in accordance with standard compliance procedures." *Id; see also id.* ("Binance said the appropriate compliance measures were taken and the account was offboarded last month.").

- In response to the statement that the internal investigation found evidence that Binance employees were involved in Blessed Trust's operations: "Binance said none of its employees logged into Blessed's account, and the claim relied on 'incorrect investigation records,' adding that, 'Any suggestion that Blessed Trust was operated, directed, or controlled by Binance is false.'" *Id.* at 9.

Doing so "undercut[s] any inference of actual malice." *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st Cir. 2018); *see also Jacob*, 626 F. Supp. 3d at 693 ("[Defendant's] behavior in reaching out to plaintiffs prior to publication evinces appropriate regard for the truthfulness of the publication."); *Prince*, 634 F. Supp. 3d at 141 (finding plaintiff failed to plead actual malice and noting "the Article reported Plaintiff's denial of the allegations"); *Lindberg v. Dow Jones & Co, Inc.*, 2021 WL 5450617, at *6 (S.D.N.Y. 2021) ("The *Journal's* inclusion of [a statement from plaintiff's spokesperson] cuts against the allegedly defamatory implication of the Second Article, allowing readers to decide for themselves what to conclude from the [article], [thus] making any allegation of actual malice less plausible.") (internal quotations omitted); *Cabello-Rondon*, 2017 WL 3531551, at *10 (where published article includes plaintiff's denials, "the article cannot be said to evince an intent to deliberately avoid learning or portraying the truth") (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) ("[R]eporting perspectives contrary to the

14

publisher's own should be interpreted as helping to rebut, not establish, the presence of actual malice.")).

Accordingly, Binance's "denials" provided to the *Journal* prior to the Article's publication do not support a finding of actual malice.

### 2.    The Timing of the Article's Publication Does Not Support an Allegation of Actual Malice

Binance further alleges that the *Journal* acted with actual malice because it engaged in a "sham investigation" by waiting "until the last minute to verify details of the story with Binance." Compl. ¶ 141. But there is no set amount of time a news organization must provide to the subject of a story for comment. In fact, courts have recognized that even *entirely failing* to contact the subject of a story prior to publication does not suffice to plead actual malice. *See Prince*, 2023 WL 4492413, at *10 ("A defendant's failure to verify statements with the plaintiff . . . does not amount to reckless disregard of the truth.") (quoting *Loeb v. News Times Comm'cns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980)) (cleaned up); *Sweeney v. Prisoners' Legal Services, Inc.*, 84 N.Y.2d 791, 793 (1995) (no showing of actual malice despite defendants "conducting no . . . investigations of [the] allegations" they published).

Nor does asking for comment on a short turnaround time plead actual malice. In *Jacob*, for example, the plaintiffs alleged that the defendant, a *New York Times* reporter, sent an "email containing 27 questions at noon and requested that [the plaintiff] respond by 9 a.m. the next day," which the plaintiff claimed was proof the *Times* was engaged in a "sham investigation" to "purposefully avoid[]" the truth. 626 F. Supp. 3d at 679, 692. The court held that the short deadline for comment did not amount to a plausible allegation of actual malice: "If anything, [defendant's] behavior in reaching out to plaintiffs prior to publication evinces appropriate regard for the truthfulness of the publication, even if that outreach was conducted only shortly before

15

publication." *Id.* at 693; *see also Coliniatis*, 965 F. Supp. at 518-19 (no actual malice where newspaper contacted plaintiff one day before publication). Here too, the fact that the *Journal* contacted Binance for comment at all *negates* rather than supports a finding of actual malice.

Regardless, Binance clearly *did* have enough time to respond to the *Journal*'s request: it provided what it characterizes in the Complaint as "substantive and explicit" comments to the *Journal* prior to the Article's publication. Compl. ¶ 42. And, as discussed above, the *Journal* carefully incorporated those comments into the Article. *See* Section I.B.1, *supra*. Further, Binance was clearly aware that news organizations were investigating Binance's firing of investigators who flagged Iranian-related transactions and had prepared a response prior to responding to the *Journal*: the allegations that Binance had fired these investigators had already been in the public domain for a week before the Article's publication as a result of the *Fortune* article, and Binance had already provided comment to *Fortune* on these allegations. Binance also released a carefully timed blog post responding to "press reports" regarding the termination of its compliance employees on its own website *after* the *Fortune* article was published and *after* receiving the *Journal*'s questions but before responding to them. *See* Bolger Decl. Ex. 4. And Binance provided comment to the *New York Times* on the same topics before sending its comments to the *Journal*.

Indeed, the very existence of the *New York Times* and *Fortune* articles also *negates* a finding of actual malice. Both of these articles reported on the core allegations that Binance challenges here. *Fortune* reported that Binance had fired the team of investigators who uncovered evidence of over $1 billion in Iran-linked transactions. *See* Bolger Decl. Ex. 2 at 1-2 (reporting that Binance "appears to be reneging on its promise" to "enter a new phase of regulatory maturity" after "investigators on the company's compliance team uncovered evidence that entities tied to Iran had received more than $1 billion through the exchange" and "at least five [of those

16

investigators] were fired"). The *New York Times* reported more specifically that Binance hosted the Hexa Whale and Blessed Trust accounts on its platform; that those accounts were linked to Iranian-backed terrorist groups; and that Binance had fired the team of compliance investigators. *See Bolger* Decl. Ex. 3 at 1 (reporting "about $1.7 billion had flowed from two Binance accounts to Iranian entities with links to terrorist groups, a possible violation of global sanctions," and "[w]ithin weeks, Binance fired or suspended at least four employees involved in the investigation"). Given this prior reporting from reputable news outlets, the *Journal* would have no reason to believe that its own article on this subject was false. *See Church of Scientology Intern. v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) (it would be "impossible to conclude that [defendant] entertained serious doubts as to the truth of his statement or spoke with a high degree of probable falsity" given the "volume of published commentary" that aligned with challenged statements).

Finally, Binance argues that the *Journal* was generally motivated to publish its Article quickly because the *New York Times* was publishing an article on the same topic, and the *Journal* was seeking "pure financial gain." *See* Compl. ¶ 40. But "[a] newspaper's motive in publishing a story"—including a desire to "increase its circulation"—"cannot provide a sufficient basis for finding actual malice." *Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657, 665 (1989); *see also Bloom*, 735 F. Supp. 3d at 472-73, 474-75 (allegation that defendant "rushed to publish" articles "purely to obtain benefits from quick publication" was "too conclusory to allege actual malice" and "a desire to turn a profit does not in and of itself indicate a defendant acted with actual malice"); *Jacob*, 626 F.Supp.3d at 693 (allegation that journalist was motivated to publish disparaging information about plaintiffs for economic reasons was insufficient to allege actual

17

malice).[10]

Accordingly, Plaintiff's allegations about the Article's timing fail to plead actual malice.

### 3.    Binance's Post-Publication Denials Are Irrelevant to an Actual Malice Inquiry

Last, Binance alleges that the *Journal* acted with actual malice because Binance sent an email to the *Journal* after the Article's publication stating that the Article was false, but the *Journal* did not retract or update the Article. *See* Compl. ¶¶ 52, 76, 83, 90, 97, 107, 115, 125-26; Bolger Decl. Ex. 5. But the actual malice inquiry focuses solely on the defendant's state of mind "at the time of publication." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984); *Herbert v. Lando*, 781 F.2d 298, 305-06 (2d Cir. 1986) ("It is self-evident that information acquired after the publication of defamatory material cannot be relevant to the publisher's state of mind of his alleged malice at the time of publication."). Accordingly, Binance's post-publication email to the *Journal* has no bearing on the actual malice inquiry.

\*        \*        \*

In sum, none of Binance's allegations—when viewed separately or together—plausibly plead that the *Journal* knew the Article was false or was highly aware of its likely falsity at the time the Article was published. For this reason, the Complaint should be dismissed.

## II.    THE JOURNAL IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER NEW YORK'S ANTI-SLAPP STATUTE

Under New York's anti-SLAPP statute, "costs and attorney's fees shall be recovered [by a prevailing defendant] upon a demonstration . . . that the action involving public petition and

---

[10] Binance claims that the *Journal* "set aside its journalistic standards" when it published the Article "as quickly as possible." Compl. ¶ 40. But even if this were true, a departure from "accepted newsgathering standards" and a company's "own commitment to fairness and impartiality" does not suffice to plead actual malice because it "sounds[s] in no more than journalistic negligence and thus fails to plausibly allege the requisite higher degree of fault." *Brimelow*, 2021 WL 4901969, at \*3; *see also Prince*, 634 F. Supp. 3d at 140 ("[C]ourts have found that "purported deviations from normal operating procedures ... do[ ] not amount to 'purposeful avoidance of the truth.'").

18

participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civil Rights Law § 70-a(1)(a). A complaint that fails on a Rule 12(b)(6) motion is "a fortiori, 'without a substantial basis in fact and law.'" *Bobulinski*, 758 F. Supp. 3d at 185; *see also Heilbut v. Cassave Sciences, Inc.*, 778 F. Supp. 3d 551, 570 (S.D.N.Y. 2025) ("The Defamation FAC's dismissal for failure to state a claim indicates that the Defamation Action was commenced without a substantial basis."). Because, as explained above, Binance's Complaint fails to plausibly plead actual malice, it lacks a substantial basis in law.[11] Accordingly, the fee-shifting provision of New York's anti-SLAPP law applies here, and the Court should find that the *Journal* is entitled to collect the attorneys' fees and costs it incurred in defending against this meritless litigation.[12]

## CONCLUSION

For the foregoing reasons, Binance's Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and this Court should find that the *Journal* is entitled to attorneys' fees and costs under New York's anti-SLAPP statute.

Dated: May 18, 2026

> Respectfully submitted,
> DAVIS WRIGHT TREMAINE LLP
>
> Katherine M. Bolger

---

[11] In *Kesner*, this Court held that § 70-a of the anti-SLAPP law did not apply in federal court because the "substantial basis" standard conflicts with Rule 12(b)(6). *See* 590 F. Supp. 3d at 701. Since that time, however, New York federal courts have recognized that the fee shifting provision of the anti-SLAPP statute, "is a substantive provision that does not conflict with a federal procedural rule." *Bobulinski*, 758 F. Supp. 3d at 177, n.7. This is because, as noted above, a complaint that fails to state a claim under Rule 12(b)(6) necessarily lacks a "substantial basis in fact and law" under the anti-SLAPP statute. Accordingly, the anti-SLAPP statute's fee shifting provision should apply in federal court. *Id.*; *see also Grifols, S.A. v. Yu*, 2026 WL 836657, at *5 (S.D.N.Y. Mar. 26, 2026); *Heilbut*, 778 F. Supp. 3d at 569; *Button v. N.Y. Times Co.*, 2025 WL 2643674, at *20-21 (S.D.N.Y. Sept. 15, 2025), *appeal filed*, 25-2634 (2d Cir. Oct. 22, 2025).

[12] Because the *Journal* intends to file a reply brief in this action and oral argument may be scheduled on this motion, the *Journal* cannot yet accurately calculate the fees it has incurred. Should this motion be granted, the *Journal* will provide the Court with a precise total of the fees incurred and supporting billing records.

19

Amanda B. Levine
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com

Azeezat Adeleke (*pro hac vice* forthcoming)
1301 K Street NW Suite 500 East
Washington, D.C. 20001
Telephone: (202) 973-4237
azeezatadeleke@dwt.com

20

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 6,802 words.  I certify under penalty of perjury that the foregoing is true and correct.

_Katherine M. Bolger_

Katherine M. Bolger

21