UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

BINANCE HOLDINGS LIMITED,  :

                    Plaintiff,  :

              vs.  :

DOW JONES & COMPANY, INC. d/b/a THE  :
WALL STREET JOURNAL,

                Defendant.  :

------------------------------------------------------------------- x

Case No: 1:26-cv-1980

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DOW JONES & COMPANY, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
Amanda B. Levine
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
(212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com

Azeezat Adeleke (*pro hac vice*)
1301 K Street NW Suite 500 East
Washington, D.C. 20001
Telephone: (202) 973-4237
azeezatadeleke@dwt.com

*Attorneys for Defendant Dow Jones & Company, Inc.*

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................... 1

    I.    THE FAC FAILS TO PLEAD A DEFAMATION CLAIM ............................................. 1

        A.    The FAC Fails to Plead Actual Malice .......................................................... 1

        B.    The FAC Fails to Plead Material Falsity as to Statements 1-4, 6-7, 9-12, 14-20 ........... 6

        C.    The FAC Does Not Plead Defamation by Implication ..................................... 7

        D.    The Fair Index Privilege Shields the Challenged Headlines and Subheadlines ........... 10

    II.    THE ANTI-SLAPP LAW ENTITLES THE JOURNAL TO ITS FEES AND COSTS .. 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................................7, 8

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................................................1, 4, 5, 9

*Branch v. Tower Air, Inc.*,
   1995 WL 649935 (S.D.N.Y. Nov. 3, 1995)....................................................................4

*Brimelow v. N.Y. Times Co.*,
   2021 WL 4901969 (2d Cir. Oct. 21, 2021).....................................................................2

*Cabello-Rondon v. Dow Jones & Co.*,
   2017 WL 3531551 (S.D.N.Y. 2017)...............................................................................7

*Cassava Sci. Inc. v. Bredt*,
   2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ................................................................1

*Crane v. Bennett*,
   177 N.Y. 106 (1904) .......................................................................................................5

*Gaeta v. N.Y. News, Inc.*,
   62 N.Y.2d 340 (1984) .....................................................................................................6

*Gross v. N.Y. Times Co.*,
   82 N.Y.2d 146 (1993) ...................................................................................................10

*Gu v. The Verge*,
   2023 WL 4599522 (Sup. Ct. N.Y. Cty. July 18, 2023) ..................................................7

*Heilbut v. Cassava Sciences, Inc.*,
   778 F. Supp. 3d 551 (S.D.N.Y. 2025)...........................................................................10

*Henry v. Fox News Network LLC*,
   629 F. Supp. 3d 136 (S.D.N.Y. 2022)............................................................................8

*Lindberg v. Dow Jones & Co.*,
   2021 WL 5450617 (S.D.N.Y. Nov. 22, 2021)................................................................9

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020): (1)...................................................................5, 6

*Nunes v. NBCUniversal Media, LLC*,
    643 F. Supp. 3d 403 (S.D.N.Y. 2022)............................................................................3

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019).....................................................................................5, 6

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022)...........................................................................2

*Stepanov v. Dow Jones & Co.*,
    120 A.D.3d 28 (1st Dep't 2014) ...................................................................................8

*Udell v. NYP Holdings, Inc.*,
    169 A.D.3d 954 (2d Dep't 2019) ..................................................................................7

*UnitedHealth Grp. v. Guardian News*,
    C.A. N25C-06-042 CLS (Del. Sup. Ct. Jul. 20, 2026) .................................................9

*Verragio, Ltd. v. AE Jewelers, Inc.*,
    2017 WL 4125368 (S.D.N.Y. Aug. 23, 2017)...............................................................3

*Wang v. Sussman*,
    2025 WL 81355 (S.D.N.Y. Jan. 13, 2025) ................................................................3, 9

*Westmoreland v. CBS*,
    596 F. Supp. 1170 (S.D.N.Y. 1984)..............................................................................3

*Zerangue v. TSP Newspapers, Inc.*,
    814 F.2d 1066 (5th Cir. 1987) ......................................................................................5

**Statutes**

N.Y. Civil Rights Law § 70-a ...............................................................................................10

**Other Authorities**

CPLR 3211(g).......................................................................................................................10

Rule 12(b)(6).....................................................................................................................4, 10

Binance's Opposition ("Opposition") confirms that this action is an impermissible effort to manufacture a defamation claim based on truthful reporting that Binance finds inconvenient. Indeed, while the Opposition is filled with rhetoric about the strengths of Binance's compliance program and the purported animus the *Journal* and its reporter have for Binance, Binance never denies the three facts at the heart of the *Journal*'s reporting: significant sums of money flowed through Binance's platform to Iran-backed terror groups, Binance fired the investigators looking into these transactions, and a number of months passed before the suspicious accounts were offboarded. These concessions doom Binance's claim. Faced with that inevitability, Binance resorts to mischaracterizing the record in an effort to show actual malice and reframing its defamation claim as one for defamation by implication, which the FAC does not and could not plead. But these efforts are unsuccessful. Because Binance's claim is, at bottom, a disagreement with the *Journal*'s editorial decisions and not a defamation claim, the Court should dismiss the FAC with prejudice and find that the *Journal* is entitled to its attorneys' fees and costs.

## **ARGUMENT**

## I.    **THE FAC FAILS TO PLEAD A DEFAMATION CLAIM**

### A.    **The FAC Fails to Plead Actual Malice**

As the Motion to Dismiss ("Motion") explained, the FAC falls far short of pleading actual malice. *See* Mot. at 12. The Opposition proves this point. *First*, it argues that Binance pled malice because Binance's pre-publication denials had a "doubt-inducing quality." Opp. at 22-24. This new argument, plucked from dicta in *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 282 (S.D.N.Y. 2013), does not grapple with the well-established case law that self-serving assertions from a patently biased source would not put the *Journal* on notice that its reporting was false. *See Cassava Sci. Inc. v. Bredt*, 2024 WL 1347362, at *26 (S.D.N.Y. Mar. 28, 2024) (denials had "especially limited value" when there were "concerns that Plaintiff may be engaging in a years-long pattern

1

of coordinated dishonesty"). The *Journal* had no obligation to accept Binance's assertions when it had contrary reporting. *See, e.g.*, *Brimelow v. N.Y. Times Co.*, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021). And even if there were some merit to Binance's suggestion that there is a difference between denials and denials with a "doubt-inducing quality" (and there is not), none of Binance's denials were doubt-inducing. On the contrary, Binance did not deny the Articles' central claims: significant funds flowed through Binance to Iran; investigators were fired; and Binance later offboarded the offending clients.[1] And to the extent Binance did deny aspects of the Articles, those denials were qualified (*e.g.*, Binance "does not *knowingly* onboard customers using incomplete/inaccurate documentation" and "did not *directly* transact with any sanctioned entities") and thus did not rebut the challenged reporting. Opp. at 23-24.[2] Binance's argument also elides that the Articles made Binance's position clear by extensively reporting its denials. *See, e.g.*, Bolger Decl. Ex. 2 at 2; Ex. 3. at 3; Ex. 4 at 3-5. Doing so negates a finding of actual malice. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 141 (S.D.N.Y. 2022).

*Second*, Binance claims the Court should discount the *Journal*'s extensive quotation of Binance's denials because the *Journal* purportedly "manipulated [the denials'] context" and "buried them" in the Articles to "blunt their impact." Opp. at 25. Not only is this allegation absent from the FAC, it is also false. Binance's own example makes this point. Binance argues the February headline said, "Binance Fired Staff Who Flagged $1 Billion Moving to Sanctioned Iran Entities" (a concededly true statement), and the Article buried Binance's denial. *Id.* But Binance neglects to mention that the *subheadline* reads, "Binance denied inquiry ended or staff fired for

---

[1] The Opposition has the same issues. For example, Statement 4 reported Binance was "cooperating far less" with law enforcement. To rebut this, Binance cites statistics about its 2025 fund confiscations and trainings. Opp. at 24. But these bare statistics do not establish whether Binance was cooperating to a *lesser extent* than previously.

[2] Binance's argument regarding its business in Russia underscores this point. While Binance claims that it "tightened controls" and "expended Enhanced Due Diligence screening to more users," Opp. at 26, n.6, this inherently admits that Binance continued to do business in Russia, which confirms—rather than negates—the challenged reporting.

the concerns." *See* Bolger Decl. Ex. 2 at 1. There is no manipulation; the denial is right next to the statement.[3] In any event, "courts shouldn't be in the business of telling reporters *how* to say what they want to say." *Wang v. Sussman*, 2025 WL 81355, at \*11 (S.D.N.Y. Jan. 13, 2025).[4]

*Third*, while Binance now seems to recognize that "unnamed" sources—like those in the Articles—are different from "anonymous" sources, Binance argues the *Journal*'s sources were still "unreliable." *See* Opp. at 27. But the only reason Binance offers for this "unreliability" is that these sources contradicted Binance's own statements. And Binance cites to no case—nor is the *Journal* aware of any—stating that a news organization must trust the version of events as told by a reporting subject (particularly one with a clear self-serving motive) over other sources.

Binance also claims that what it refers to as the "Retaliation" and "Dismantling" Statements[5] "lack[ed] attribution to any source." Opp. at 27. Not so. The February Article states it relies on "documents, foreign law-enforcement officials and the people familiar with Binance's operations," and it explicitly attributes information about the dismantling of the investigation to "company documents and people familiar with Binance's operations." Bolger Decl. Ex. 2 at 2; Ex. 3 at 2. *Nunes v. NBCUniversal Media, LLC*, 643 F. Supp. 3d 403 (S.D.N.Y. 2022), is therefore inapposite. And, as to the "Retaliation Statements," as explained in Section I.C, *infra*, the Articles do not state Binance fired the investigators because of their findings. Binance cannot plead actual

---

[3] Binance's reliance on *Westmoreland v. CBS*, 596 F. Supp. 1170, 1174 (S.D.N.Y. 1984), is therefore misplaced because that decision relates to misleading editing of a source's words. It has no relevance here.

[4] Binance also misstates the *Journal*'s argument regarding the "on background" denials. *Compare* Opp. at 26 *with* Mot. at 13. The point is not that the *Journal* disregarded these statements (it did not). It is that Binance should not be permitted to argue that the *Journal* "blunt[ed]" the impact of the denials when Binance provided them off the record.

[5] Binance seeks to repackage the February Article's reporting into groups of statements—for example, the "Retaliation Statements"—and treat them as if they were one. Binance's intent to obfuscate the Article's actual words by using these defined terms is evidenced on page 24 of the Opposition, where Binance sets up the straw man defined term—the "Diminished Cooperation Statements"—and then compares it to the content of Binance's denials. But it is the Article as published in the *Journal* that this Court must look to, not Binance's invented terms. *See Verragio, Ltd. v. AE Jewelers, Inc.*, 2017 WL 4125368, at \*7 (S.D.N.Y. Aug. 23, 2017) (explaining, "a court looks to the words of the allegedly defamatory communication—not to a party's summary or characterization of that communication").

malice by alleging that the *Journal* did not have a source for a statement it did not make.

*Fourth*, Binance's allegations that the *Journal* and Berwick published the Articles out of bias and animosity are inaccurate and incapable of demonstrating actual malice as a matter of law. Mot. at 22.  Binance claims Berwick wrote articles "denouncing Binance"[6] and stated he views Binance employees "to be criminals."  Opp. at 28-29.  This is false, and Binance appears to have made it up out of whole cloth.  Even more, Binance's claim that Berwick "refused" its offer "to make a spokesperson immediately available" before the March Article and "put that conversation off" to the publication date, Opp. at 8, 29, is demonstrably false.  Berwick agreed to speak to a Binance representative on March 10—the same day Binance made the offer—and it was *Binance* that pushed the conversation to the next day.  *See* Bolger Decl. Ex. 11 at 2.

Binance also argues that the *Journal* was "intent on publishing without" Binance's responses and offered a short window for comment.  Opp. at 29.  But it offers no rebuttal to the authorities the *Journal* cited, establishing that (1) the *Journal* had no obligation to even request comment from Binance; and (2) the law does not impose a set amount of time a news organization must provide for comment.  *See* Mot. at 18.  And it fails to take into account that Binance did respond to each of the Articles prior to publication (both directly and in blog posts) and the *Journal* did incorporate Binance's comments. Further, even if the *Journal* wanted to publish around the same time as the *New York Times* for "profit," Opp. at 31,[7] Binance again offers no response to the well-settled principle that a profit motive does not plead actual malice, *see* Mot. at 21.

---

[6] Binance's belief that the Articles "denounce" it is irrelevant; "[w]ere . . . criticized corporations to be allowed to dictate the contents of such articles, censorship would have won out over free speech."  *Biro*, 963 F. Supp. 2d at 285 (quoting *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1352 (S.D.N.Y. 1977)).

[7] Binance purports to base this meritless argument on articles attached to its counsel's affidavit. Not only do those articles not support his point, but Binance cannot seek to amend its complaint on this Rule 12(b)(6) motion by affidavit or otherwise.  *See Branch v. Tower Air, Inc.*, 1995 WL 649935, at *6 (S.D.N.Y. Nov. 3, 1995) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint.").

4

*Fifth*, Binance's claims the *Journal* "rush[ed] to publish" and "fail[ed] to investigate," Opp. at 29-30, are belied by the Articles themselves, which set forth the numerous sources (including Binance) that the *Journal* spoke with.  Ultimately, Binance's true complaint is not that the *Journal* did not investigate, but that it did not accept Binance's denials as gospel.  But while Binance may have preferred the *Journal* act as its mouthpiece, that is not the law.

*Sixth,* Binance claims the *Journal*'s failure to retract the Articles evidences actual malice. *See* Opp. at 33-34.  But Binance is wrong.  *See* Mot. at 21-22.  Indeed, one case cited by Binance predates the constitutionalization of actual malice by sixty years, *see Crane v. Bennett*, 177 N.Y. 106 (1904), and the other, *Biro*, 963 F. Supp. 2d at 281, merely includes the equivocal statement that under "certain circumstances" failure to retract may "'tend [] to support a finding of actual malice.'"  This quote derives from *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987), which itself explains only that "refusal to retract an *exposed* error" could support an inference of malice.  But Binance's retraction demands did not expose an error; they simply repeated the same denials Binance sent prior to publication.

*Seventh*, in apparent recognition that these allegations fail on an individual basis, Binance argues they plead actual malice when considered cumulatively.  But zero plus zero is still zero. And while Binance cites extensively to *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019), *see* Opp. at 10, 21-23, 28-30, the vast differences between *Palin* and this case undermine Binance's reliance on it.  In *Palin*, which one court in this district described as "*sui generis*," *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 186 (S.D.N.Y. 2020): (1) the challenged article hyperlinked to a source that directly contradicted the challenged statements (which themselves lacked sourcing); (2) the article's editor had previously worked on stories that dispelled the challenged statements; and (3) the editor's brother was a U.S. Senator, and the plaintiff previously

endorsed his opponent.  *Id*.  In other words, the editor was "uniquely situated as both politically biased against [the plaintiff] and in possession of direct knowledge of the debunked claims" being published.  *Id.*  Because there are no such facts here, *Palin* offers no assistance.

*Finally*, Binance argues repeatedly throughout the Opposition about whether something is "news" or "newsworthy" or "old news" or "no news."  Opp. at 14, 16. But "[d]etermining what editorial content is of legitimate public interest and concern is a function for editors," *Gaeta v. N.Y. News, Inc*., 62 N.Y.2d 340, 349 (1984), not libel plaintiffs.  Binance would have preferred the *Journal* write the Article more flatteringly, but that is not defamation.  Binance has failed to plead actual malice, and the FAC should be dismissed on this basis alone.

### B.    The FAC Fails to Plead Material Falsity as to Statements 1-4, 6-7, 9-12, 14-20

In addition, as the Motion explained, the FAC fails to plead material falsity because Binance either does not deny the truth of the challenged statements or does not challenge portions of the Articles that provide the basis for these statements.  *See* Mot. at 23-29.  In response, Binance claims it *did* dispute the truth of the challenged statements.  *See* Opp. at 10-11.[8]  Binance is wrong. The FAC does not deny: (1) Binance fired investigators looking into Iran-linked transactions, thus effectively dismantling the investigation, at least for a period of time (Statements 1-3, 7, 11-12, 14, 20); (2) the Blessed Trust account was labeled "internal" and access to it was restricted (Statement 9), and it and other suspicious accounts were flagged internally long before Binance removed them (Statements 6, 10, 16, 19); or (3) money moved on its platform to Iran (Statement 15).  Indeed, both the FAC itself, *see* ¶ 151, and Binance's blog post, *see* Bolger Decl. Ex. 8, admit that significant funds moved across Binance to accounts related to the IRGC.

---

[8] Binance does not appear to dispute that it failed to allege falsity as to Statement 4.  Instead, Binance addresses this statement only within the defamation by implication context.  *See* Opp. at 10, 13.

Further, Binance argues that Statement 17 (Binance was at the "core" of a network of money flowing to the IRGC) and Statement 18 (Binance was a "financial artery" for the IRGC) accuse it of "knowingly supporting the IRGC." Opp. at 13. But the statements do not say that (and Binance does not purport to bring an implication claim stemming from them). *Id.* Further, the May Article itself reports that money flowed through Binance to the IRGC, *see* Mot. at 25 (citing Bolger Decl. Ex. 4 at 1-2, 4, 6, 10), and Binance does not challenge such statements as false in this action. Binance argues that the *Journal* cannot "negate falsity by manufacturing supposed admissions . . . from its own Articles." Opp. at 12. But New York courts regularly look to unchallenged portions of an article when assessing challenged statements. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 463 (S.D.N.Y. 2012) (calling plaintiff "con man" not actionable when plaintiff "d[id] not allege the [article's] description of the underlying events involving [the plaintiff]" were false); *Udell v. NYP Holdings, Inc.*, 169 A.D.3d 954, 957 (2d Dep't 2019) (allegation that plaintiff's improper parking endangered public was non-actionable when "[plaintiff] did not challenge the accuracy of the quotation attributed to him [in the article] where he admitted, in essence, that he parked where he should not have parked"); *Gu v. The Verge*, 2023 WL 4599522, at *13 (Sup. Ct. N.Y. Cty. July 18, 2023) (referencing plaintiff's "history of abuse" was non-actionable when article "describe[d] allegations of domestic violence" and plaintiff "d[id] not dispute" these "key factual statements"). Regardless, because Binance admits money moved through its platform to IRGC-linked wallets, it cannot plead material falsity as to the characterizations that it was at the "core of" or "an artery" for this network. *See Cabello-Rondon v. Dow Jones & Co.*, 2017 WL 3531551, at *10 (S.D.N.Y. 2017).

## C.    The FAC Does Not Plead Defamation by Implication

Unable to plausibly allege falsity, Binance pivots, claiming instead that Statements 1-4, 6-7, 9-16, and 19-20 are defamatory by implication. *See* Opp. at 13-18. As Binance recognizes,

7

however, to state an implication claim, it must plead the challenged Articles "reasonably convey[] a defamatory inference" and the *Journal* "intended or endorsed the inference." *Id.* at 14. This is a "rigorous showing," *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014), which the FAC fails to make. The paragraphs to which Binance directs the Court concern Binance's actual malice argument. FAC ¶ 272-79. But the "intend or endorse" standard is an "objective inquiry" that must be separately pled. *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 150 (S.D.N.Y. 2022). Binance did not plead the *Journal* intended or endorsed the alleged implications.

Even if it had, Binance's claim would still fail. *First*, as to many statements, the Articles "directly contradict[]" Binance's alleged implications. *Biro*, 883 F. Supp. 2d at 474. For example, Binance claims Statement 9 (access to the Blessed Trust account was "tightly restricted") implies Binance intended to shield that account from investigators. Opp. at 15. But the February Article explains that the investigators, in fact, investigated the account (and thus had access to it), negating this implication. Similarly, as to Statements 2, 3, and 12, Binance alleges the Articles convey that Binance "'dismantled' its compliance investigation *without taking further action*." Opp. at 2 (emphasis added). But the Articles make clear Binance *did* take further action—it later offboarded the suspect accounts, showing the investigation continued. *See* Bolger Decl. Ex. 2 at 8; Ex. 3 at 3.

Further, Statement 4 (the episode "echoed some of the same concerns that drew U.S. scrutiny in 2023") and Statement 13 (Binance was "back in the legal spotlight") do not, as the Opposition argues, imply that Binance was actively violating sanctions laws. *See* Opp. at 19. Rather, considered in the Articles' context, these Statements reflect the undisputed fact that money was sent to Iran via Binance, which raised concerns about Binance's compliance regime. *See UnitedHealth Grp. v. Guardian News*, C.A. N25C-06-042 CLS, at 31 (Del. Sup. Ct. Jul. 20, 2026) (it was "not reasonably conceivable that the [defendant] intended to indorse any inference other

8

than the truth and scrutinize the effects of the truth"). *Wang* is instructive. There, an article reported on a woman's claim that the plaintiff handed her a glass of wine she suspected was laced with drugs, and she was later raped by another man. 2025 WL 813555, at *1. It also reported that there were unrelated allegations of sexual misconduct against the plaintiff, *id.* at *3, and that his colleagues answered "yes" when a detective asked whether they believed he was capable of drugging someone, *id.* at *10. The court nonetheless held the article did not imply the plaintiff drugged the woman, finding it made "no attempt to resolve the dispute." *Id.* at *10; *see also Lindberg v. Dow Jones & Co.*, 2021 WL 5450617, at *6 (S.D.N.Y. Nov. 22, 2021) ("The Journal's inclusion of [the plaintiff's denial] cuts against the allegedly defamatory implication of the [] [a]rticle."). Here, as there, the Article does not resolve the dispute as to the effectiveness of Binance's compliance program —it simply raises questions.

*Second*, Binance claims that Statements 1-3, 7, 11-12, 14 and 20 imply that Binance fired its investigators based on their findings, and that Statements 6, 10, 15, 16, and 19 imply that Binance *knowingly* permitted Iran-related transactions on its platform. *See* Opp. at 15, 18. But, again, the Articles included Binance's denials on both points, negating the inferences Binance attempts to draw. And to the extent a reader would walk away from the Articles with the impressions Binance alleges, they are protected opinions based on the Articles' unchallenged facts. *See* Mot. at 30. In response, Binance claims the *Journal* "does not explain how its opinion argument is related to its claim that it made no defamatory statements by implication." Opp. at 17. But the Motion does do so: it cites directly to *Biro* for the relevant argument. *See* Mot. at 30.

Here, if a reader believed Binance fired the employees because they were investigating Iran,[9] that would be an opinion based on the unchallenged facts that (1) the investigators were

---

[9] Binance argues being fired for investigative findings has a "precise meaning" that is "capable of being proven true or false." Opp. at 17. But even statements with precise meanings can be opinions when "the facts on which they are

looking into Iran; and (2) they were fired after reporting their findings. Similarly, if a reader believed Binance knowingly facilitated Iran-linked transactions, this would be an opinion based on the unchallenged facts that (1) Iran-linked accounts were flagged; and (2) action was not immediately taken. Any implication claim Binance now purports to bring therefore still fails.

### D.    The Fair Index Privilege Shields the Challenged Headlines and Subheadlines

Binance next argues the fair index privilege does not apply when a headline repeats false statements in an article. Opp. at 18. But the challenged February and May headlines and subheadlines summarize facts that Binance *concedes* are true. *See* Mot. at 31-32. For this reason, they are shielded by the fair index privilege.

## II.    THE ANTI-SLAPP LAW ENTITLES THE JOURNAL TO ITS FEES AND COSTS

Finally, because Binance's claim cannot survive a Rule 12(b)(6) motion, the *Journal* is entitled to its fees under New York's anti-SLAPP law. Binance argues that decisions awarding fees in identical cases are "wrong[]" because Section 70-a's "substantial basis" standard conflicts with Rule 12(b)(6). Opp. at 35. Binance is incorrect. Section 70-a creates a *substantive* right, as contrasted with the *procedural* standard in CPLR 3211(g). *See Heilbut v. Cassava Sciences, Inc.*, 778 F. Supp. 3d 551, 566-69 (S.D.N.Y. 2025). As such, if the *Journal*'s Motion is granted, it should be entitled to fees to be pursued via the proper procedure under the anti-SLAPP law.

### CONCLUSION

For the foregoing reasons, Binance's FAC should be dismissed with prejudice, and this Court should find that the *Journal* is entitled to its attorneys' fees and costs. In addition, Binance, which has already amended its pleading, should not be permitted to do so yet again.

Dated: July 20, 2026

---

based are fully set forth," and "it is clear to the reasonable reader . . . that the accusation is merely a personal surmise built upon those facts." *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 154-55 (1993).

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

*[signature]*

Katherine M. Bolger
Amanda B. Levine
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Telephone: (212) 489-8230
katebolger@dwt.com
amandalevine@dwt.com

Azeezat Adeleke (*pro hac vice*)
1301 K Street NW Suite 500 East
Washington, D.C. 20001
Telephone: (202) 973-4237
azeezatadeleke@dwt.com

11